FRANK F. SPENCER et al., Appellants, *v.* HENRY WEBER et al., Respondents.

1. WILL — RIGHT OF TRUSTEE THEREUNDER TO ASSIGN BOND AND MORTGAGE — WHEN MORTGAGOR IS PROTECTED IN PAYMENT TO ASSIGNEE. The assignment or transfer of a bond and mortgage belonging to a trust fund is within the authority conferred upon a trustee by a will requiring executors to invest a certain sum upon bond and mortgage, and providing that the investment should remain intact and invested until testator's oldest child should arrive at full age, when a moiety of the principal, interest and increase thereon should be paid her, and the remaining moiety should remain intact and be paid to his youngest child when he attained his majority, and that when the investment is made the executors should transfer the securities to a trustee named who should control and manage them, receive, collect and pay over interest and principal thereon, and in all things carry out the directions and provisions of the will as to said investment, since the provision that the investment should remain intact during the minority of his children does not require the fund to be invested in a mortgage or mortgages which should run during that time and which could, under no circumstances, be discharged and the fund reinvested. but requires only that the fund should remain intact in that it could not be properly diverted from the purpose to which it was dedicated by the testator; and where, without any knowledge of the existence of the trust, except that the bond and mortgage was given to a trustee, the mortgagor, in good faith, pays the interest and principal to the assignee who had them in his possession under an assignment which contained a general authority to collect, the payment discharges his liability and he is entitled to have them discharged of record.

2. RELATION OF ATTORNEY AND CLIENT BETWEEN PARTIES TO ASSIGNMENT WILL NOT AVOID PAYMENT TO ASSIGNEE. The fact that the assignee of such bond and mortgage is the attorney for the assignor will not avoid the payment thereof to the assignee, since the mere existence of the relation of attorney and client between the parties to the assignment is not sufficient to charge the mortgagor with notice that the assignee had no title thereto, and the assignment having been properly executed and the assignee authorized to receive the principal and interest the mortgagor is justified in making such payment.

*Spencer* v. *Weber*, 26 App. Div. 285, affirmed.

(Argued May 17, 1900; decided June 19, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered February 25, 1898, upon an order affirming a judgment in

favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George H. Fletcher* for appellants. The will gave no power to change the investment. The plain intent of the testator forbade such power. (*Kirsch* v. *Tozier*, 143 N. Y. 396; Chaplin on Express Trusts, § 211; *Denike* v. *Harris*, 84 N. Y. 89; *Ferris* v. *Ferris*, 2 Dem. 336; *Campbell* v. *Beaumont*, 91 N. Y. 464; *King* v. *Talbot*, 40 N. Y. 76; *Matter of Cant*, 5 Dem. 269; *Suarez* v. *de Montigny*, 1 App. Div. 494.) There was no proof of extraordinary circumstances requiring or justifying the assignment by Alston, trustee, to Maben of the mortgage in suit. (1 Perry on Trusts, § 466; Chaplin on Express Trusts, § 210; *Toronto G. T. Co.* v. *C., B. & Q. R. R. Co.*, 64 Hun, 1; 138 N. Y. 657; *Matter of Weston*, 91 N. Y. 502.) The transfer of the trust securities by the trustee to his lawyer was presumptively a breach of trust. Such transfer conveyed no title as against the plaintiff, and was notice to Weber that the title to the securities was not thereby conveyed. (*Evans* v. *Ellis*, 5 Den. 640; *Hawley* v. *Cramer*, 4 Cow. 717; *Howell* v. *Ransom*, 11 Paige, 538; 3 Am. & Eng. Ency. of Law, 334.) The respondent, Weber, and those claiming under him were chargeable with the knowledge of the restrictions and limitations of the trust. The satisfaction and cancellation of the mortgage was void and ineffective as against the plaintiffs. (*Acer* v. *Westcott*, 46 N. Y. 390; *Briggs* v. *Davis*, 20 N. Y. 15; *Swarthout* v. *Curtis*, 4 N. Y. 415; *Ware* v. *Egmont*, 31 Eng. L. & Eq. 89; *Swarthout* v. *Curtis*, 5 N. Y. 301; *F. L. & T. Co.* v. *Walworth*, 1 N. Y. 433; *Waterman* v. *Webster*, 108 N. Y. 157; *Moot* v. *B. M. I. Assn.*, 157 N. Y. 202; *Kirsch* v. *Tozier*, 143 N. Y. 394; *McPherson* v. *Rollins*, 107 N. Y. 316.)

*Isaac M. Kapper* for respondents. The defendant Weber was justified in paying off his mortgage to Maben, who held

a full and valid assignment thereof, together with the possession of the original bond and mortgage. (Thomas on Mort. § 342; *Van Kuren* v. *Corkins*, 4 Hun, 129; 66 N. Y. 77.) The trustee had the right to sell the bond and mortgage. (1 Perry on Trusts [3d ed.], 279, § 225; 2 Perry on Trusts [3d ed.], 462, § 814; *Field* v. *Schieffelin*, 7 Johns. Ch. 150; *Leitch* v. *Wells*, 48 N. Y. 586; *Dillaye* v. *Commercial Bank*, 51 N. Y. 355; *Hutchins* v. *State Bank*, 21 Metc. 421; *Shaw* v. *Spencer*, 100 Mass. 392; *Killam* v. *Costley*, 52 Ala. 86; *Van Hoose* v. *Bush*, 54 Ala. 353; *Hough* v. *Bailey*, 32 Conn. 288; *Walker* v. *Craig*, 18 Ill. 116; *Petrie* v. *Clark*, 11 S. & R. 377.) The only notice with which the mortgagor was chargeable arose from the description of the mortgagee. His obligation to pay the debt was based upon the mortgage and a payment to the assigns of the original mortgagee was a strict compliance with the terms of the mortgage and effected its discharge. (2 R. S. [9th ed.] 1801, § 66; *McPherson* v. *Rollins*, 107 N. Y. 316; *Swarthout* v. *Curtis*, 5 N. Y. 301; *Waterman* v. *Webster*, 108 N. Y. 157; *F. L. & T. Co.* v. *Walworth*, 1 N. Y. 433.)

MARTIN, J.   The purpose of this action was to set aside an assignment of a mortgage made by the defendant John I. Alston as trustee to Wilber B. Maben, to cancel a certificate and the record of the satisfaction of such mortgage made by Maben as assignee, and recorded in the office of the register of Kings county, to declare the mortgage thus assigned which was made by the defendants Weber to the defendant Alston a lien upon the mortgaged premises, to reinstate it upon the record, and to foreclose it when thus reinstated.

Thomas T. Spencer died October 28, 1877, leaving a last will and testament which was admitted to probate in January, 1878.   It in effect provided that his executors should, out of his estate, invest six thousand dollars in bonds and mortgages on unincumbered real estate of twice the value of the amount loaned, at interest at the rate of seven per cent per annum, payable semi-annually, for the benefit of his two minor chil-

dren, Caroline and Frank, the income, however, to be paid, a certain proportion to his mother and the remainder to his sister during their lives. Upon their death, or the death of either of them, the legacy given to her was to cease, and the interest upon the six thousand dollars was to be, from time to time, collected, controlled, managed and held in trust by a trustee named for the benefit of such children until they should respectively reach their majority, and in such manner as to yield the greatest aggregate increase. He also bequeathed the principal sum of six thousand dollars so invested and the income thereof after the death of his mother and sister, to his two children, and directed that said investments should remain intact and invested until his eldest child should arrive at full age, when a moiety of the principal, with a moiety of the interest and increase thereon, should be paid to her; and that the remaining moiety of the principal and interest should remain intact and on interest until his youngest child should arrive at full age, when the principal and interest were to be paid to him. By the will it was further provided that when the executors should have invested the six thousand dollars as directed, they should transfer the securities taken upon such investment to the trustee named, to be received by it in trust for the benefit of his children, and that the trustee should control and manage such securities, receive, collect and pay over the interest and principal due or to grow due thereon, and in all things carry out the directions and provisions of the testator's will as to said investment and any matter connected therewith.

The executors subsequently collected that sum, and invested it in two bonds and mortgages, one made by Monaghan and the other by one Streker. The United States Loan and Trust Company, which was named as trustee in the will, having refused to accept the trust, the defendant Alston was duly appointed as a substituted trustee in its place.

On September 22, 1882, Spencer's executors, in compliance with the provisions of the will, assigned and delivered to Alston as such trustee the two bonds and mortgages mentioned. Subsequently Alston foreclosed the Streker mort-

gage, and in pursuance of a judgment of foreclosure sold the premises to the defendant Henry Weber, to whom they were conveyed by the referee for forty-one hundred and twenty-five dollars. Eleven hundred and twenty-five dollars was paid in cash upon the sale, and the remaining three thousand dollars was secured by a bond and mortgage upon the premises sold. They were made payable to John I. Alston as trustee of the estate of Thomas T. Spencer, deceased, his successors or assigns.

October 23, 1883, Alston, as trustee, assigned this bond and mortgage to one Maben, who was a lawyer and the legal adviser of Alston as trustee. After the assignment the interest as it became due was paid by the mortgagor to Maben. At the maturity of the mortgage July 2, 1886, Weber paid Maben the whole amount of principal and interest secured by the mortgage, obtained a certificate of satisfaction from him, procured it to be recorded in the office of the register of Kings county, where the assignment from Alston to Maben was also recorded, and the record of the mortgage was marked " canceled of record." Caroline Spencer became of age July 22, 1890, and Frank reached his majority March 6, 1893.

The question presented in this case is whether Alston, as substituted trustee under the testator's will, possessed authority to assign or transfer the securities in which the trust fund was invested so as to protect the mortgagor in paying the interest and principal of his bond and mortgage to such assignee as it became due, when acting in good faith and without notice, actual or constructive, of any fact relating to the trust or the mortgage except that Alston was a trustee and held the mortgage as such.

The contention of the appellants is that the trustee had no power to assign the mortgage in question. As sustaining this contention, much stress is laid upon the language of the will directing the investment of the fund in bonds and mortgages, and that such investment should remain intact and invested until his children should arrive at the age of twenty-one years. This leads to the inquiry whether the provision of the will

that such investment should remain intact and invested as aforesaid until his children should arrive at the age of twenty-one years is to be construed as requiring the executors or trustee to invest the fund in a mortgage or mortgages to run during the minority of his children, and which could, under no circumstances, be discharged and the fund reinvested by the trustee, or whether that direction is to be construed as requiring the fund to be invested in bonds and mortgages and that the fund should remain intact, in that it could not be properly diverted from the purpose to which it was dedicated by the testator. We think the latter is the proper construction of that provision, and that the testator's purpose was to create a fund of six thousand dollars to be kept invested in bonds and mortgages and that no part of it was to be employed for any other purpose or invested in any other class of securities, but that the fund should be thus invested from time to time as necessity might require.

In this connection it is to be observed that the testator, after directing the executors to invest this fund, in the manner specified, for the benefit of his children, expressly provides that the interest upon the investment should be collected, controlled, managed and held in trust by the trustee, and that upon the transfer of such securities to him he should control and manage them, receive, collect and pay over the interest and principal due or to grow due thereon, and in all things carry out the directions and provisions of the will as to the investment or any matter connected therewith. When the whole will is read and considered, it becomes obvious, we think, that the testator intended to confer upon the trustee authority to change the securities which should come into his hands, to reinvest the fund in like securities when they should be paid, to collect and enforce the securities thus taken and keep the fund invested in the class of securities mentioned.

If the language of the will does not expressly confer upon the trustee authority to reinvest the fund when it should come into his hands, and vary the securities to the extent of taking other bonds and mortgages, it is clearly implied from its

terms.   As to the character of the investments to be made, either by the executors or trustee, it is clear that the testator intended the fund to be invested in bonds and mortgages upon unincumbered real estate.   So long as the trustee kept this fund invested in that class of securities, he was acting within the power conferred upon him by the will.   When the mortgage which was transferred to him by the executors became due, it seems plain that it was his duty to reinvest the money received upon its payment in other bonds and mortgages upon unincumbered real property.   The executors had not invested this fund in mortgages which became due at the time of the majority of the infants, but had obtained such as in the ordinary course of business could be obtained and transferred them to the trustee.   Under these circumstances, the trustee, being invested with power to manage and control the fund and securities, to recover and collect the principal and interest thereon, clearly had authority to collect the first mortgage when due, and to reinvest the money thus received in other mortgages of the character required by the will.

Any other construction of this language would not give to the words employed their natural and proper meaning or carry into effect the obvious intent of the testator.   The executors invested one-half of the fund in a bond and mortgage which became due in three years.   This came into the hands of the trustee.   It was not paid, and he was, therefore, required either to allow the fund to remain invested in an overdue mortgage, the lien of which might be discharged at any time by a tender of the amount unpaid, or to foreclose it and thereby to obtain its payment.   He pursued the latter course, took a new mortgage for the amount of the principal, which he was clearly authorized to do.

We think it is manifest, from the nature of this trust and the power conferred upon the trustee by the terms of the will, that he had authority to satisfy or transfer the securities in which this fund was invested, or to vary the investment thereof from time to time, and was limited by the provisions of the will only by the character of the securities to be taken,

which were such bonds and mortgages as were described in the will. If such was his power under the will, then the trustee had authority to assign the second bond and mortgage taken by him upon the premises in question, and although he may not have acted properly or honestly, yet, when the mortgagor in good faith paid the principal and interest due upon them to the assignee, who had them in his possession under an assignment which contained a general authority to collect, with no knowledge of the existence of any trust except that the bond and mortgage was given to a trustee, it is clear that the payment discharged the liability of the mortgagor upon the bond and mortgage, and he was entitled to have them satisfied and discharged of record.

The appellants, however, claim that the doctrine of the cases of *McPherson* v. *Rollins* (107 N. Y. 316), and *Kirsch* v. *Tozier* (143 N. Y. 390, 396) is adverse to this conclusion. We do not think so. Those cases are essentially unlike the case at bar. In the *McPherson* case, Deming, for the purpose of making a provision for his daughter and two grandchildren, conveyed to the former certain premises, she executing a mortgage which was given as security for the payment to the grantor, or to the general guardian of one of the infants, of fifty dollars annually for her benefit until she was fifteen, and afterwards one hundred dollars annually until she was of age. Subsequently the grantor, at the request of his daughter, executed a satisfaction, and the mortgage was discharged of record. The premises were afterwards conveyed by the daughter to a grantee who had no actual notice of the execution of the mortgage. Upon these facts it was held that a valid and irrevocable trust was created, and as it had not been renounced by the *cestui que trust*, the discharge was in contravention of the trust, and, therefore, void. But it will be observed that the mortgage in that case, by its express terms, was not only security for the payment of the sums specified, but it was to remain as security therefor during the plaintiff's minority. The defendants knew that, and also knew that the time when the trusteee was authorized to receive the money had not

arrived. In that case it was said that the power of the trustee was limited by the terms of the mortgage; that his apparent authority was his real authority, and that he had no power to vary its terms, nor to receive payment in anticipation of the time fixed by the mortgage. If in the case at bar the mortgage had been taken payable at the majority of the plaintiffs, then the case cited would have been an authority upon the question before us. In this case no · such condition exists. Here the power of the trustee was not controlled by the terms of the mortgage, but by the intent of the testator as indicated by the provisions of his will, and the debt in which the fund was invested was due, while in the case cited the provisions of the trust were contained in the mortgage, and by its terms was not due or payable until the majority of the infants.

In *Kirsch* v. *Tozier* the rule applicable to cases like this is stated. It is there said : " It has frequently been held that a person dealing with an executor, administrator or trustee, who, from the nature of his office, or by the terms of the trust, has power to satisfy or transfer the securities of the estate, or to vary the investment from time to time, is not bound to go further and ascertain whether in fact the act of the executor or trustee is justified, and that no breach of trust was intended. It is sufficient for his protection that he acts in good faith, and if the act of the executor or trustee is justified by the terms of the power, the party dealing with him is protected." The court then proceeded to distinguish that case from a case like the one at bar, and placed great stress upon the fact that the trustee had no power to accept the payment of the mortgage before it became due, or to vary the trust securities, and held that such power could not be implied from the mere fact that the party was a trustee of the security.

Moreover, in that case the security which the trustee sought to discharge was a lien held by him as trustee upon his own land, thus showing upon the face of the transaction that in giving a satisfaction the trustee was dealing with himself; that the act was in his own interest, and that acting in such double capacity the transaction was unusual and special, and

the bank, with a knowledge that the trustee was the owner of the land upon which the security was a lien and that it was not due, was held bound to inquire by what authority he acted, and that, not having inquired as to the authority of the trustee to discharge the prior mortgage, it was not entitled to protection as a *bona fide* purchaser. Both of these cases are radically different from the case at bar, and neither involves any principle which is at war with the conclusion we have reached. In one, the principle upon which we have based our conclusion is expressly recognized; in the other, the cases sustaining it are recognized, and the case then under consideration distinguished. Thus it is seen that the position of the appellants is not sustained by the cases cited.

The rule applicable to this case is thus stated in Perry on Trusts: "A trustee may generally sell the personal property belonging to his trust estate, especially if he have authority to change the securities or vary the investments. * * * If it appears to the purchaser that he is purchasing trust property he will be put upon no inquiry, except to ascertain whether the trustee has power to change or vary the securities. If the instrument of trust is silent upon the power of varying the securities, it is to be determined upon the whole scope and purpose of the trust whether the trustee has, in fact, the power to dispose of the property." (2 Perry on Trusts [5th ed.], § 814; *Field* v. *Schieffelin*, 7 Johns. Ch. 150; *Leitch* v. *Wells*, 48 N. Y. 585; *Dillaye* v. *Commercial Bk.*, 51 N. Y. 345; *In re Cooper's Trusts*, Weekly Notes, 1873, p. 87; *Sampayo* v. *Gould*, 12 Simons, 426.)

In the *Field* case it was held that where a purchaser dealt fairly with a guardian who had power to dispose of the personal property of his ward, he had the right to presume that the guardian acted for the ward's benefit, was not bound to inquire into the state of the trust, and was not responsible for the faithful application of the money unless he knew or had sufficient information at the time that the guardian contemplated a breach of trust and intended to misapply the funds, or was in fact by the very transaction applying it to his private purpose.

*Leitch* v. *Wells* is to the effect that an executor has a right to sell and transfer stocks and other securities of an estate; that one buying in good faith or loaning his money upon the security of the property, is not responsible for the application of the purchase money or money loaned, and that his right to the property transferred is not affected by knowledge upon his part of the existence of a claim for a legacy against the estate.

In the *Dillaye* case it was, in substance, held that where a trustee is clothed with power to manage and control the trust estate, an assignment by him of a mortgage impressed with the trust to a *bona fide* purchaser or pledgee cannot be impeached by the *cestui que trust.*

In *re Cooper's Trusts* is was held that the power of investment carries with it the power of varying the securities.

In the *Sampayo* case the vice-chancellor said : " A clause authorizing the change of securities is usual and customary, and is usual and customary only because it is found to be of the greatest possible convenience to parties."

We think the authorities cited, to which many others might be added, justify the conclusion reached by the courts below that Alston as trustee under the will of the testator had power to satisfy, transfer or vary the securities in which the fund was invested as he might deem proper or necessary, and, consequently, had the power to assign the bond and mortgage in question.    Therefore, the payment by the defendant Weber to the assignee was valid, and the discharge of the mortgage was proper as to the former.

The appellants, however, contend that the transfer by the trustee to his attorney was presumptively a breach of trust; that it transferred no title as against the plaintiffs, and was notice to the mortgagor that no title to the securities was thereby conveyed. · That this transfer was in fact a breach of trust as to the plaintiffs, and that as between the trustee and his attorney it might be held invalid, may be assumed.    But the question here is, whether the mere existence of the relation of attorney and client between the assignor and assignee was

notice to the mortgagor that the assignee had no title to the bond and mortgage, so that their payment by him was at his peril. We know of no statute or principle of law which prevents a client from dealing with his attorney. The most that can be said is that, as between them, the transaction will be closely scrutinized with a view of ascertaining if the attorney has obtained any undue advantage of his client. But we are aware of no principle which required, or would have justified, the mortgagor in declining to pay his mortgage when it became due, for the sole reason that it had been transferred by the trustee to his attorney. If such a transfer were prohibited by law a different question might arise. But we are unable to conceive any principle upon which it can be properly held that the mortgagor was bound to make any additional inquiries in relation to the transaction, because the relation of attorney and client existed between the assignor and assignee. Nor do we perceive that, if such an inquiry had been made, he would have learned anything which would have justified him in refusing to pay his mortgage debt when it became due. The mortgagor had no direct or implied connection with the transaction between the trustee and his attorney, and was not, we think, bound to inquire into the circumstances to ascertain the character or effect of the dealings between them. The assignment of the mortgage was properly executed; it constituted the assignee the lawful attorney of Alston, and authorized him to receive the principal and interest upon the mortgage, and, consequently, justified the mortgagor in paying it to him.

These conclusions render it unnecessary to examine the question of the Statute of Limitations insisted upon by the respondents, or any other of the questions presented upon the argument of this appeal. We think the decisions of the courts below were correct, and that the judgment and order should be affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, LANDON and WERNER, JJ., concur.

Judgment and order affirmed.